**FLEET TRANSPORT COMPANY, Inc., a Corporation, Plaintiff,**

v.

**INSURANCE COMPANY OF NORTH AMERICA, a Corporation, et al., Defendants.**

Civ. A. No. 926–E.

United States District Court,
M. D. Alabama, E. D.
March 27, 1972.

Lange, Simpson, Robinson & Somerville, Birmingham, Ala., for plaintiff.

Walker, Hill, Gullage & Adams, Opelika, Ala., for defendant Patterson.

London, Yancey, Clark & Allen, Birmingham, Ala., for defendant Carriers.

Dunn, Porterfield, McDowell & Scholl, Birmingham, Ala., for defendant Ins. Co. of North America.

## DECLARATORY OPINION

VARNER, District Judge.

This cause having been heard and all evidence presented, it is now submitted for decision upon the pleadings and evidence.

Basically, this action for declaratory judgment presents two issues: (1) Whether the deceased, Harry C. Patterson, Sr., was at the time of his death an employee of Plaintiff, Fleet Transport Company; and (2) if so, whether the Workmen's Compensation Act of the State of Georgia constitutes the exclusive remedy for the injuries and death of the decedent.

As to the first issue, the evidence was convincing that Patterson was at the time of his death an employee of Fleet, and the briefs of the parties herein do not seriously contest this conclusion.

The second issue raises a question of law: Whether one state can fix an exclusive remedy for injuries or death involving its residents wherever the accident happens so that the "full faith and credit" clause (Art. IV, § 1) would require other states to refuse to enforce their own remedies. The Supreme Court of the United States has considered this question on several occasions and has reached differing results depending upon the circumstances and particular state statutes involved.

In Bradford Elec. Light Co. v. Clapper, 286 U.S. 145, 52 S.Ct. 571, 76 L.Ed. 1026 (1932), the Court held that, in a suit brought against a Vermont employer by his Vermont employee to recover for an injury suffered while the employee was temporarily in New Hamp-

shire, a federal court in New Hampshire was bound to apply the Vermont Compensation Act rather than the new Hampshire Compensation Act. However, two years later, in Alaska Packers Ass'n v. Industrial Acc. Comm., 294 U.S. 532, 55 S.Ct. 518, 79 L.Ed. 1044, the Court held that the "full faith and credit" clause did not require a California court to give effect to the exclusive-remedy aspect of the Alaska Compensation Act in preference to its own in a suit by an Alaska employee against an Alaska employer for a California injury.

In the *Alaska Packers* case, the Court set forth the standards to be observed in applying the full faith and credit clause, saying:

"It has often been recognized by this Court that there are some limitations upon the extent to which a state will be required by the full faith and credit clause to enforce even the judgment of another state, in contravention of its own statutes or policy. (Citations omitted)

"In the case of statutes, the extra-state effect of which Congress has not prescribed, where the policy of one state statute comes into conflict with that of another, the necessity of some accommodation of the two states is still more apparent. * * *

"The necessity is not any the less whether the statute and policy of the form is set up as a defense to a suit brought under the foreign statute or the foreign statute is set up as a defense to a suit or proceedings under the local statute. In either case, the conflict is the same. In each, rights claimed under one statute prevail only by denying effect to the other. In both the conflict is to be resolved, not by giving automatic effect to the full faith and credit clause, compelling the courts of each state to subordinate its own statutes to those of the other, but by appraising the governmental interests of each jurisdiction, and turning the scale of decision according to their weight. * * *

"Prima facie every state is entitled to enforce in its own courts its own statutes, lawfully enacted. One who challenges that right, because of the force given to a conflicting statute of another state by the full faith and credit clause, assumes the burden of showing, upon some rational basis, that of the conflicting interests involved those of the foreign state are superior to those of the forum. It follows that not every statute of another state will override a conflicting statute of the forum by virtue of the full faith and credit clause; that the statute of a state may sometimes override the conflicting statute of another, both at home and abroad; and, again, that the two conflicting statutes may each prevail over the other at home, although given no extraterritorial effect in the state of the other. * * * *" 294 U.S. at 546–548, 55 S.Ct. at 523.

Comparing the *Alaska Packers* decision to the previous holding in the *Clapper* case, the Court observed that these standards were "fully recognized" in *Clapper*, in which:

"* * * upon an appraisal of the governmental interests of the two states, Vermont and New Hampshire, it was held that the Compensation Act of Vermont, where the status of employer and employee was established, should prevail over the conflicting statute of New Hampshire, where the injury occurred and the suit was brought. In reaching that conclusion, weight was given to the following circumstances: That liability under the Vermont Act was an incident of the status of employer and employee created within Vermont, and, as such, continued in New Hampshire where the injury occurred; that it was a substitute for a tort action, which was permitted by the statute of New Hampshire; that the Vermont statute expressly provided that it should extend to injuries occurring without the state and was interpreted to preclude recovery by proceedings brought in any other state; and that there was

no adequate basis for saying that the compulsory recognition of the Vermont statute by the courts of New Hampshire would be obnoxious to the public policy of that state.

" * * * While in Bradford Electric Light Co. v. Clapper, supra, it did not appear that the subordination of the New Hampshire statute to that of Vermont, by compulsion of the full faith and credit clause, would be obnoxious to the policy of New Hampshire, the Supreme Court of California has declared it to be contrary to the policy of the state to give effect to the provisions of the Alaska statute and that they conflict with its own statutes.

"There are only two differences material for present purposes, between the facts of the Clapper Case and those presented in this case: The employee here is not a resident of the place in which the employment was begun, and the employment was wholly to be performed in the jurisdiction in which the injury arose. * * *." 294 U.S. at 548–549, 55 S.Ct. at 524.

In subsequent cases it has become apparent that, in dealing with the question of full faith and credit as applied to workmen's compensation, the Supreme Court has further adopted an interest weighing approach. See Carroll v. Lanza, 349 U.S. 408, 75 S.Ct. 804, 99 L.Ed. 1183 (1955). The factors which have been considered in weighing the interests of the various states are numerous but have been concisely catalogued by Justice Frankfurter in his dissent in Carroll v. Lanza, supra:

"The relevant considerations have been: the place of the employment contract; the residence of the parties; the place of injury; the possibility of the workman becoming a public charge in the State seeking to award compensation, see Alaska Packers Asso. v. Industrial Acci. Comm., [294 U.S. 532, 55 S.Ct. 518, 79 L.Ed. 1044] supra; the interest of a State in securing prompt payment of medical fees to its residents, see Pacific Employers Ins. Co. v. Industrial Acci. Comm., [306 U.S. 493, 59 S.Ct. 629, 83 L.Ed. 940] supra; the aspect of exclusiveness of the foreign statute, see Industrial Com. v McCartin [330 U.S. 622, 67 S.Ct. 886, 91 L.Ed. 1140, 169 A.L.R. 1179, 21 NCCANS 1] supra; the State's interest in bodily safety and economic protection of workers within it; the difference between a defense (which if rejected results in irremediable liability) and a cause of action (which if not allowed in one State can be pursued in another), see Bradford Electric Light Co. v. Clapper [286 U.S. 145, 52 S.Ct. 571, 76 L.Ed. 1026, 82 A.L.R. 696] supra; the amount of work to be performed in a State, see Cardillo v. Liberty Mut. Ins. Co. [330 U.S. 469, 67 S.Ct. 801, 91 L. Ed. 1028] supra; and the policy of determinate liability and prompt remedy underlying workmen's compensation acts." 349 U.S. at 419, 75 S.Ct. at 810.

The primary issues in this case are twofold: (1) balancing the interests of the State of Georgia and Alabama, which state has the primary interest in the subject matter of this suit, and (2) is the exclusive remedy provided by the Georgia Act repugnant to the public policy of Alabama.

Concerning the first issue, the facts in this case are similar to those in Clapper, supra, the only interest that Alabama has in the suit is that the accident occurred within its boundaries while the deceased was making a trip in interstate commerce. In the instant case the deceased was at the time of the accident a resident of the State of Georgia. His contract of employment with Fleet Transport was entered into and made in Georgia. The deceased was covered by the Workmen's Compensation Act of Georgia in that he had not elected not to be so covered, and, in fact, had requested that payments for coverage be deducted from his pay. Title 114–201, Code of Georgia Annotated.

The Workmen's Compensation Act of Georgia covers employees in interstate commerce, Title 114–108, supra, and provides that it shall be the exclusive remedy, Title 114–103, supra. It further provides for compensation for injuries to a resident employee while outside of the state, Title 114–411, supra.

The Workmen's Compensation Act of Alabama, like the Georgia Act, is exclusive of all other remedies. Title 26, § 272, Code of Alabama (Recomp.1952). It further provides that it does not apply to employees of common carriers engaged in interstate commerce. Title 26, § 263, supra. Under the Alabama law, employees not covered under workmen's compensation may, if applicable, bring an action under the Employer's Liability Act, Title 26, § 326, supra, or for other such remedies as they may have. The Alabama Employer's Liability Act has been held to have no extra-territorial effect. See Alabama Great So. R. Co. v. Carroll, 97 Ala. 126, 11 So. 803.

Comparing the Georgia and Alabama Workmen's Compensation Acts as to exclusivity, it would appear that, the Acts being similar in effect, neither state would find it repugnant to its public policy to enforce the provisions of the other. See, e. g., Bradford Elec. Light Co. v. Clapper, supra.

However, the question arises, as to the effect of Alabama's exclusion of employees involved in interstate commerce, and its holding that the Alabama Employer's Liability Act is not extra-territorial. Alabama Great So. R. Co. v. Carroll, supra. Would it be repugnant to Alabama's public policy as to interstate employees to enforce the Georgia Act?

In Crider v. Zurich Ins. Co., 380 U.S. 39, 85 S.Ct. 769, 13 L.Ed.2d 641, an Alabama resident, employed by a Georgia corporation sued in Alabama courts and received a judgment under the Georgia Compensation Act. Subsequently, plaintiff sued his employer's insurance carrier in Federal District Court on his Alabama judgment, and the Court dismissed plaintiff's claim. Upon review to the Supreme Court of the United States, the case was reversed, the Court holding that the Alabama policy in regard to the conflict of interest between Georgia and Alabama was reflected in the Alabama judgment in which the Alabama Court adopted and enforced the remedy provided by Georgia.

The facts in the instant case are even more compelling toward Georgia's interest than in *Crider*, supra, in that the plaintiff herein was a resident of and employed in the State of Georgia. Under these facts we cannot say that, in light of *Crider*, the Alabama courts would find enforcement of the Georgia Act repugnant to the public policy of Alabama. Accordingly, it is the finding of this Court that the Georgia Workmen's Compensation Act provides the Plaintiff's exclusive remedy in this cause.

As to the questions presented for declaratory judgment in this cause, it is the opinion of this Court, and it is hereby declared, as follows:

1. The decedent, Harry C. Patterson was, at the time of his death, an employee of the Plaintiff, Fleet Transport Co., Inc.

2. The decedent was at the time of his death subject to the exclusive remedy provided by the Georgia Workmen's Compensation Act and was, therefore, not subject to the provisions of the Alabama Workmen's Compensation or Employer's Liability Acts.

3. Under the terms and provisions of its policy, Defendant, Carriers Insurance Company, is not required to defend against or pay any judgment on the complaint heretofore filed in Civil Action No. 907–E by Myra Faye Patterson, as Administratrix of the Estate of Harry C. Patterson, Sr.

4. Under the terms and provisions of its policy, Defendant, Insurance Company of North America, is required to defend against or pay any judgment rendered on the complaint heretofore filed in Civil Action No. 907–E, to the extent liability may

arise from the terms of Georgia Workmen's Compensation Act.

It is the further

Order, judgment and decree of this Court that parties herein shall each bear their own costs.